STATE *ex rel.* BISCAYNE STEVEDORING COMPANY v. DAVE
TURNER, I. C. WILLIAMS, B. F. BUTLER, as Commissioners of Broward County Port District and Constituting
Broward County Port Authority, and Ex-officio Members
of and Acting as Port Everglades Pilot Commission, and
R. T. SPANGLER, as Secretary of Broward County Port
Authority and Port Manager of Port Everglades.

196 So. 816
Division B
Opinion Filed June 21, 1940
Rehearing Denied July 8, 1940

S. J. *Barco* and *Roy S. Wood,* for Plaintiff in Error;

R. R. *Saunders* and *Rogers, Morris & Griffis,* for Defendants in Error.

BROWN, J.—The relator was a contracting stevedore with its principal offices in Dade County, Florida. It operated informally at Port Everglades with the consent and approval of the Pilot Commission from the opening of the port. In 1932 the Board of Pilot Commissioners issued to it a license to operate as a stevedore at Port Everglades. Relator transported experienced stevedores from Dade County to Port Everglades to load and unload ships entering the port and down through the years since the opening of the port has been carrying on that work without criticism or complaint. In the year 1934 the board adopted a resolution imposing an annual excise tax or license fee upon stevedores at Port Everglades upon the payment of which an annual permit was issued, beginning November 1 and end-

ing October 31. Relator paid these annual permit fees and received annual permits each year. Thereafter, in October, 1938, shortly before the expiration of its current permit, the relator tendered the fee and applied for a permit for the ensuing year beginning November 1, 1938. The board denied the application for a permit and returned the fee, and shortly thereafter offered to issue to relator a special limited permit authorizing him to handle cargoes for Lykes Brothers Steamship Company and the French Line only, upon the payment of the fee of $100.00.

Relator had ample capital and equipment to carry on the business as a contracting stevedore and had always conducted its business according to good business principles, and had built up and enjoyed an excellent reputation in the business.

The amended alternative writ after setting out these facts alleged that the refusal of the board to issue the general permit and the attempt on the part of the board to limit the operations of the relator to handle the cargoes for the two designated lines only was unreasonable, arbitrary and capricious and would result in serious damage to relator by depriving it of its right to handle business for other lines and to enjoy the profits therefrom, to its irreparable damage; and that this was done from ulterior motives, and to discrimination against relator, to the benefit of a competitor, according to the allegations of the writ.

The alternative writ was sued out against the persons who were commissioners of Broward County Port Authority and ex-officio members of and acting as the Port Everglades Pilot Commission, as well as against the Secretary and Port Manager of Port Everglades. The amended alternative writ commanded that the three persons who were commissioners of Broward County Port Authority, and as

such constituting said Port Authority, and ex-officio acting as said Port Everglades Pilot Commission to assemble in official meeting and accept the sum of one hundred dollars tendered by relator and grant to it a permit to act as stevedore at Port Everglades for the balance of the year beginning November 1, 1938, and ending October 31, 1939, and that said respondent Secretary of Port Authority and Port Manager thereupon issue and deliver to relator said permit.

Relator filed its petition for the writ on November 30, 1938, and an alternative writ was issued on November 30, 1938, and the amended petition was filed on January 12, 1939, and the amended alternative writ of mandamus was issued on the same date.

The respondents filed a joint and several motion to quash the amended alternative writ on January 25, 1939. One of the grounds of the motion was that the writ seeks to command the respondents to do that which is not required by the provision of Chapter 17506, Laws of Florida of 1935. Another ground was that it failed to show that the Port Authority, in denying the application for permit, acted in an arbitrary and capricious manner, and that to compel the respondents to perform the act sought to be performed would be to deny the discretion vested in them by the State of Florida. Another ground is that the writ does not affirmatively show that an application had been made to the present members of the Port Authority whose term of office began after the first Monday after the first Tuesday in January, 1939, under Chapter 17506, for the granting of a permit to act as stevedore and offered to pay the fee of one hundred dollars that the present members of the Port Authority took office on the first Tuesday after the first Monday in January, 1939, and that no acts or things done by the former members of the commission or Port Authority are binding upon the respondents.

The circuit judge granted the motion to quash the alternative writ on March 11, 1939. In connection with said order the court stated that in his opinion Chapter 17506, Special Acts of 1935, controls the operation of Port Everglades by the Port Authority, and that the relator has not made or stated such a case as would require respondents to renew relator's former license, or to grant an unlimited permit, such action being within the discretionary powers of the Port Authority. The court also stated that the relator failed to show that it had ever qualified under Section 3860, Comp. Gen. Laws of Florida, in that there is no allegation that relator has taken an examination or given any bond as required by said section and that not having qualified under the law, relator has no vested right in a license issued to it by the Pilot Commission of Port Everglades in October, 1932, which license had been renewed each year until 1938.

The respondents, defendants in error here, appear to contend that under Section 19, Art. IX, of Chapter 17506, Special Acts of 1935, the Port Authority has the power to appoint and remove stevedores at its pleasure. The Act of 1935, referred to abolished the Broward County Port District created by an Act of 1931 and created, established and organized a Port District in Broward County to be designated as the Broward County Port District and provided for its territorial boundaries, its government, jurisdiction, powers and privileges. Said Section 19 of Article IX of the Act reads as follows:

"Section 19. The Port Authority is hereby granted the power to appoint a Pilot Commission consisting of three or more members as the Port Authority may determine, a harbor master, stevedores and longshoremen, and all other persons necessary to properly transact the shipping business

of said Port Everglades, and fix their powers, duties and compensation. All persons so appointed under the provisions of this Section shall serve at the pleasure of the Port Authority, provided, however, that in all events their term of office shall automatically terminate with the termination of the term of office of the Port Commissioners so employing or appointing them. The Commissioners of the Port Authority shall serve as a Pilot Commission until a Pilot Commission shall be appointed as herein provided."

It will be observed that the Act provided that the commissioners of the Port Authority shall serve as a Pilot Commission until a Pilot Commission shall be appointed as provided in the first sentence of said Section 19. It appears that the Commissioners have continued to act as the Pilot Commission of Port Everglades.

Plaintiff in error contends that this section gives the Port Authority power to appoint its own employees or servants, and that the power granted in the section to appoint stevedores and longshoremen is merely the power to appoint laborers to work for them as such stevedores and longshoremen. That this is merely the power which many governmental administrative authorities have to appoint and remove subordinate officers and employees. It is further contended that Section 19 does not vest the Port Authority as such with power to examine a contracting stevedore and determine his qualifications or to grant to him a license to operate at the Port.

It is further pointed out that the duties of a contracting stevedore at a great port like Port Everglades, or any other port of this State, are important, the responsibility is grave, and that the proper performance of his work may determine whether the vessel loaded by him can make a safe voyage.

That Section 7997 C. G. L. makes it a criminal offense for one who is not a licensed stevedore to act as such.

And as pointed out by plaintiff in error, it is made unlawful, under Section 3865, C. G. L., for any person to control or attempt to control the owner or master of any vessel in awarding the loading or unloading of his vessel, except by solicitation in his own behalf as a contracting stevedore regularly engaged in the business of stevedoring. In this connection, see 60 C. J. 32 and cases cited; also The Satilla, 235 Fed. 58; 148 C. C. A. 552.

The action of the members of the Port Authority acting as the Pilot Commission of Port Everglades is in conflict with Section 3865, which recognizes the right of the owner or master of a vessel to award the loading or unloading of his vessel to any contracting stevedore he desires, though Section 3860 would indicate that this means that the contracting stevedore has been licensed and also impliedly provides, when read in connection with 3865 C. G. L., that a contracting stevedore regularly engaged in the business of stevedoring shall have the right to solicit the business of loading or unloading of the vessel of any owner or master whose business he desires to solicit. Sections 3860-3861 C. G. L. read as follows:

"Section 3860. Any board of commissioners of pilotage of this State may grant licenses to competent and trustworthy persons to act as stevedores in the port and harbor for which said board is appointed; but such board shall only grant such number of licenses as it may deem necessary, having due regard to the business of the port and harbor; and no person shall be licensed except such as on examination prove competent to serve as stevedores. Said board shall require from each person licensed satisfactory bond, in penalty not to exceed three hundred dollars, for the

proper performance of his duties as stevedore. But said board of commissioners shall not appoint any person to act as stevedore who has not been a resident of the State six months previous to the date of his commission. (Ch. 1740, Sec. 1, Feb. 7, 1870; Ch. 2032, Sec. 1, Feb. 18, 1874.)

"Section 3861. Persons so licensed shall hold their licenses during good behavior, but any license may be revoked by said board upon complaint, after due notice and hearing, if in the opinion of said board the misconduct, neglect of duty or other cause of complaint shall be sufficient to justify such removal."

If the board of Pilot Commissioners of Port Everglades, constituting a board of Commissioners of Pilotage under Section 3860, saw fit from 1932 to 1938 to license the Biscayne Stevedoring Company, plaintiff in error here, *without requiring* an examination as to competency or a bond, under Section 3860, they cannot be heard to complain of their own non-action in this particular, which may have been upon the ground that the Biscayne Stevedoring Company had long proven its competency to act as a stevedore, and that no bond was necessary to secure the proper performance of its duty. At any rate, they did grant licenses from 1932 to 1938 to said Stevedoring Company, and offered to grant another license for the year 1938 and 1939 which limited the Stevedoring Company to performing its services to only two of the lines entering the port. It seems to us that this restriction was unreasonable, capricious and arbitrary, and also unlawful, unless said Section 19 of Article IX of Chapter 17506 gave them the power to thus limit the operative scope of licenses issued by them as the Pilot Commission of Port Everglades.

Our construction of that section is that at least as to stevedores, it applies to stevedores who are employed by

the Port Authority. As to such employees, they have the power to "fix their powers, duties and compensation" and the persons so appointed or employed serve only at the pleasure of the Port Authority and terminate absolutely with the termination of the office of the Pilot Commissioners. Surely it was not the intention of the Legislature by the enactment of said Section 19 to repeal Sections 3860-3861 and 3865 of the Compiled General Laws of 1927, which are derived from statutes enacted by the Legislature in 1870, 1874 and 1887.

Under Section 3860 C. G. L., a pilot commission has authority to limit the number of licenses granted with due regard to the business of the port. But if this Section 19 of Chapter 17506 is to be construed as vesting in the Port Authority acting as a Pilot Commission authority to license or refuse to license competent and reliable contracting stevedores at their pleasure, or to place in their licenses such limitations or restrictions as they may see fit as to the particular owners or masters of vessels with whom they will be permitted to do business, or at their pleasure to permit one stevedore to operate at the port while another equally qualified is denied, said Section 19, so construed, would come in conflict with Sections 1 and 12 of the Declaration of Rights and the Fourteenth Amendment to the Federal Constitution. As was said in Maxcy v. Mayo, 103 Fla. 552, 139 So. 121:

"It has long since become an established rule of constitutional law in these United States, that power and discretion, however exerted, and by whomsoever exercised, must be used in such manner as not to infringe upon or impair the fundamental rights of life, liberty, property and the pursuit of happiness. The very idea (as one opinion delivered by the Supreme Court of the United States puts it), that one

man may be compelled to hold his life, business, property, means of living or any material thing essential to his enjoyment of life, at the mere will of another, is intolerable in any country where freedom prevails, and is the very essence of slavery itself. Yick Wo v. Hopkins, 118 U. S. 356, 6 Sup. Ct. 1064, 30 L. Ed. 220."

See also Ellis v. Thiesen, 78 Fla. 47, 82 So. 607; State *ex rel.* Pittman v. Barker, 113 Fla. 865, 152 So. 682; State *ex rel* Kennel Club, Inc., v. State Racing Commission, 116 Fla. 143, 156 So. 317; State *ex rel.* Kennedy v. Knott, 123 Fla. 295, 166 So. 835; State *ex rel.* Tullidge v. Hollingsworth, 103 Fla. 801, 138 So. 372.

The Port Authority acting as a Pilot Commission has not denied the competency and integrity of the relator Stevedoring Company but has admitted it by offer to give it a permit to handle the cargoes for two lines. Indeed, such admission was made each time they issued the licenses to the relator and accepted the one hundred dollars annual permit fee, during the years 1934 to 1938.

Another serious question presented by this case, is the allegation in the motion to quash (which would have been more appropriate to an answer) that the terms of office of the respondents as commissioners of the Broward County Port District expired on the first Tuesday after the first Monday in January, 1939, but it appears to have been admitted in the briefs that the same commissioners who were in office when this proceeding was instituted had been re-elected in 1938 and they again took the same offices on the first Tuesday after the first Monday in January, 1939, at the expiration of their former terms. There was no break in their incumbency. They therefore have the authority to respond to the command of the alternative writ with reference to the issuance of a license without imposing the

restrictions contained in the proposed license, which restrictions they had required back in October or November of 1938. It is contended that no demand for issuance of the license has been made upon the respondents since they took office on the first Tuesday after the first Monday in January, 1939, but as the same persons who were made respondents here continued to constitute the commissioners of Broward County Port Authority throughout the entire period covered by this litigation in the court below, we think this contention is without merit.

Our conclusion is that the court below erred in granting the motion to quash the alternative writ and that the judgment rendered following such order, to which this writ of error is addressed, must be reversed.

Reversed and remanded.

WHITFIELD, P. J., and CHAPMAN, J., concur.

BUFORD, J., concurs in opinion and judgment.

Chief Justice TERRELL and Justice THOMAS not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.