WIGGINTON, Judge.
Appellant instituted this action in mandamus against appellee municipal corporation by which it sought a peremptory writ requiring respondent to issue to it a permit to construct its natural gas pipeline along certain described rights-of-way lying within the streets of the municipality. From an adverse judgment, this appeal is taken.
By its petition appellant alleged that it is a public utility corporation doing business in Florida and supplying natural gas for domestic and industrial purposes to the inhabitants of the area adjacent to the respondent municipality. Appellant further alleged that it applied to appellee for a permit to construct and operate a pipeline along one of the city streets in the municipality for the purpose of serving the inhabitants thereof, but its application was denied without just cause. Respondent filed its return to the alternative writ in which it alleged that prior to the institution of this action it had adopted a municipal ordinance granting to another public utility corporation an exclusive franchise to construct and operate a gas pipeline system within the municipality for the purpose of furnishing gas to the residents thereof; that pursuant to such contract, that utility company had completed construction of its gas line and was now operating its system in the streets designated by petitioner as the location for the gas line it desired to install.
The primary issue involved in the case concerns the lawful power and authority of the appellee city to grant an exclusive franchise to a public utility corporation to construct and operate a gas distribution *715 system within the rights-of-way of the streets in the municipality.
Respondent municipal corporation was created in 1961 by a special act of the Florida Legislature.[1] The section of the city charter which enumerates its powers provides as follows:
“Section 10. General powers of the city. — City of Ward Ridge hereby created, established and organized shall have full power and authority.
* * * * * *
“S. Franchises. — To grant franchises of all kinds for the use of the city streets, waters and waterways, public beaches and recreational facilities, and other public places, in the manner elsewhere provided herein.”
Appellant premises its position on the well established principle of law prevailing in this state which holds to the proposition that a municipality has no power to grant an exclusive franchise to a public service corporation to use its streets unless the power not only to grant a franchise but also to grant an exclusive franchise has been delegated to it by the legislature either expressly or by necessary implication.[2] Appellant urges that the above-quoted section of the city charter does not expressly or by implication confer upon the municipality the power to grant an exclusive franchise to a public utility corporation. It takes the position that the words “to grant franchises of all kinds” has reference to the different types of franchises which the city may elect to grant such as contracts for furnishing electrical, gas, water, sewer, or other similar services, but does not mean nor have reference to “exclusive” and “nonexclusive” franchises. On the contrary, it is appel-lee’s position that the above-quoted language of the city charter relates to the power of the City of Ward Ridge to grant franchises, both exclusive and nonexclusive, and was never intended simply as an enumeration of those types of franchises for the furnishing of the different types of utility services which the city may elect to grant. The problem before us therefore resolves itself into one of statutory construction.
A further examination of the city charter reveals an additional grant of power to the municipality in the following respect, to wit:
“Section 10. General powers of the city. — City of Ward Ridge hereby created, established and organized shall have full power and authority:
* * * * *
“P. Public Utilities. — To furnish any and all local public services, including * * * gas, * * * and to charge and collect necessary fees or charges therefor; to purchase, hire, construct, own, extend, maintain, operate or lease any public utilities, including * * * gas plants and distribution systems, * * * ; and to establish, impose and enforce rates and charges for supplying such services or conveniences by the city to any person, persons, firm or corporation.”
From the foregoing provision of the charter it is apparent that the municipality is empowered in the exercise of its discretion to construct and operate its own gas distribution system within the city, as a proprietary as distinguished from a governmental function, and to impose and enforce rates and charges for supplying such service to its inhabitants. We are of the view that since the city has the lawful authority to construct and operate a gas distribution system to the exclusion of any outside competition by other utility companies, it likewise possesses the power to enter into a contract with a public utility corporation to furnish that service in lieu of performing the service itself as a proprietary function of the city.
*716 A similar situation was present in the case of Miami Beach Airline Service, Inc. v. Crandon[3] involving the Dade County Port Authority. In that case it appears that the Dade County Port Authority was authorized by its legislative charter to engage in the proprietary function of providing facilities and services for the loading, unloading, and handling of passengers, mail, express and freight entering and departing from the airport. It was also empowered to enter into contracts with others for the purpose of carrying out its functions and responsibilities under its charter. Nowhere in the charter was the Port Authority granted the power to enter into exclusive contracts with third persons for any purpose. The Supreme Court held, however, that since the Authority was empowered by its charter to own and operate such facilities as were necessary for the handling of aircraft passengers and the operation of the airport project, it likewise possessed the power to grant an exclusive franchise to a separate corporation to transport all commercial airline passengers from the airport area to points of destination within the county.
The Supreme Court’s holding in the Dade County Port Authority case was consistent with its previous holding in the case of State v. Jacksonville Terminal Co.[4] In that case the legislative act creating the terminal company contained no grant of authority to enter into exclusive franchises with third persons for the purpose of carrying out its duties and responsibilities under the act. Despite this lack of statutory authority, the Supreme Court held that since the terminal company possessed the right to engage in the business of transferring baggage of all passengers entering the railroad terminal, it likewise possessed the right to grant an exclusive franchise to the Jacksonville Baggage Company, a separate business entity, to perform the function it could have performed had it elected to do so. A similar result was reached in the case of State v. Wells[5] which upheld the validity of an exclusive contract entered into between the Jacksonville Terminal Co. and Western Union Telegraph Company granting to the latter the right to solicit and handle telegraph messages on the terminal property.
On the basis of the foregoing authorities, we hold that under its charter respondent municipal corporation possessed the right and lawful authority to enter into an exclusive franchise with the public utility company involved in this case to construct and operate a gas distribution system within the corporate limits of the city. The judgment appealed so holding is hereby affirmed.
SPECTOR, C. J., and JOHNSON, J„ concur.

. Ch. 61-2987, Laws of Florida, Special Acts of 1961.

. Colen v. Sunhaven Homes, Inc. (Fla.1957), 98 So.2d 501.

. Miami Beach Airline Service, Inc. v. Crandon (1947), 159 Fla. 504, 32 So.2d 153.

. State ex rel. Burr v. Jacksonville Terminal Co., 90 Fla. 721, 106 So. 576.

. State ex rel. Postal Telegraph-Cable Co. v. Wells, 96 Fa. 591, 118 So. 731.